UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NATHAN M. LONG                                                                                              Plaintiff

v.                                                                                    Civil Action No. 3:22-cv-00122-RGJ

NATIONWIDE RECOVERY SERVICE,                                                                    Defendant
INC., et al.,

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Nathan M. Long ("Long"), and Defendant, Oliver Adjustment Company, Inc. ("OAC") both moved for summary judgment. [DE 25; DE 24]. Each party filed responses and replies. [DE 26; DE 27; DE 28; DE 29]. OAC also moved for leave to file a sur-reply [DE 30] in response to new arguments raised in Long's reply [DE 28]. Finding that Long raised new arguments in their reply, OAC's motion for leave to file sur-reply is **GRANTED**. Briefing is complete, and the motions are ripe. The Court exercises federal question jurisdiction in this case. For the reasons below, Long's motion for summary judgment is **DENIED**; and OAC's motion for summary judgment is **GRANTED**.

**I.    Background**

Around August 2021, Long reviewed his personal TransUnion credit report and discovered three medical debts which had been furnished to TransUnion by OAC.

1) A $105 balance dated July 10, 2014[1] with a delinquency date of November 12, 2014

2) A $86 balance dated November 2, 2015 with a delinquency date of April 19, 2016

3) A $152 balance dated November 3, 2015 with a delinquency date of April 19, 2016

---

[1] Defendant disputes that these are the dates of service since the OAC documents merely label these as "date." [DE 29 at 402].

[DE 25-2; DE 25-3 at 329]. Long's claim for relief centers on the first account. [DE 28 at 382-83]. Long maintains that he does not recall the date of service for the account nor when it went into default. [DE 24-3 at 193; DE 24-4 at 272]. He sent a dispute letter to OAC on August 2, 2021 claiming that the debts were not his. [DE 26-2]. OAC responded soon after, confirming the debts and supplying associated billing statements. [DE 24-5 at 296]. Long later paid all three accounts in full. [DE 1-3 at 19].

Long asserts claims under the Fair Debt Collection Practices Act ("FDCPA"), which prohibits debt collectors from communicating "credit information which is known or which should be known to be false." 15 U.S.C. § 1692(e)(8). He asserts that OAC reported false dates of first delinquency ("DOFDs"), which are the dates by which debts are measured to determine when they are deleted from a consumer's credit report. [DE 28 at 382-83]. He claims OAC's actions induced him to pay at least one debt for $105 that otherwise would have aged off his credit report. [DE 28 at 382-83].

Long has argued both that the correct DOFDs are thirty days after the date of service [DE 1-3 at 18-19], and the same as the date of service [DE 26 at 334]. OAC maintains that the DOFDs were correctly reported, and even if they were false, they were not material to Long's decision to pay the debts. [DE 24 at 143-48].

While Long originally claimed OAC violated sections (e) and (f) of the FDCPA, he has since forfeited his claims under (f). [DE 25-1 at 303]. Therefore, the only issue before the Court is Long's claim under 15 U.S.C. § 1692(e)(8), regarding OAC's reporting of DOFDs.

  **II.**  **Standard**

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue

of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party must produce specific facts showing a material issue of fact for trial. *Anderson*, 477 U.S. at 247–48. "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations but must view the evidence and draw all reasonable inferences in a light most favorable to the non-moving party. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). The non-moving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence. . . of a genuine dispute[.]" Fed. R. Civ. Pro. 56(c)(1)(A)–(B); *see also Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

3

**III.   Analysis**

    **a.  Elements of claim**

The FDCPA "was enacted to prevent a wide array of unfair, harassing, deceptive, and unscrupulous collection practices by debt collectors." *Currier v. First Resol. Inv. Corp.*, 762 F.3d 529, 532 (6th Cir. 2014). The statute is "extraordinarily broad" and prohibits a wide array of conduct, including making false representations. *Barany–Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008) (quoting *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)); 15 U.S.C. § 1692(e). To establish a claim under 15 U.S.C. § 1692(e)(8), a plaintiff must establish four elements:

1. The plaintiff is a "consumer" under the statute;
2. The debt at issue arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C. § 1692(a);
3. The defendant is a "debt collector" under the statute; and
4. The defendant has "communicat[ed] or threaten[ed] to communicate to any person credit information which is known or which should be known to be false.";

*See Whittiker v. Deutsche Bank Nat'l Tr. Co.*, 605 F. Supp. 2d 914, 938-39 (N.D. Ohio 2009). Only the fourth element is at issue.

Whether a debt collector's actions are considered false or deceptive under § 1692(e) is judged by whether the "least sophisticated consumer" would be misled by the defendant's actions. *Currier*, 762 F.3d at 53 (citation omitted). Additionally, any false statement must be "material" to state a claim for relief. *See Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012). A statement is material if "in addition to being technically false, [it] would tend to mislead or confuse the reasonable unsophisticated consumer." *Id*. at 327. Other courts have held that to

materially mislead requires the statement to "influence a consumer's decision or ability to pay or challenge the debt." *Miljkovic v. Shafritz & Dinkin, P.A.*, No. 8-14-CV-635-T-33TBM, 2014 WL 3587550 (M.D. Fla. July 18, 2014), *aff'd on other grounds*, 791 F.3d 1291 (11th Cir. 2015); *see also Calogero v. Shows, Cali & Walsh, LLP*, 614 F. Supp. 3d 384, 396 (E.D. La. 2022) ("A false, deceptive, or misleading statement is 'material' when it has 'the ability to influence a consumer's decision.") (citation omitted).

The parties dispute whether the reported DOFDs were false and if they were, whether they were material.

### i. Dates of First Delinquency

The crux of this dispute is how debt collectors are to calculate DOFDs under the FDCPA. This is a purely legal question. DOFD reporting is governed by the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. § 1681. While the FDCPA governs debt collection communications with consumers, the FCRA governs credit reporting by debt collectors. The FCRA establishes multiple ways to report a DOFD:

> For purposes of this paragraph only, and provided that the consumer does not dispute the information, a person that furnishes information on a delinquent account that is placed for collection, charged for profit or loss, or subjected to any similar action, complies with this paragraph, if —
> (i) the person reports the same date of delinquency as that provided by the creditor to which the account was owed at the time at which the commencement of the delinquency occurred, if the creditor previously reported that date of delinquency to a consumer reporting agency;
> (ii) the creditor did not previously report the date of delinquency to a consumer reporting agency, **and the person establishes and follows reasonable procedures to obtain the date of delinquency from the creditor or another reliable source** and reports that date to a consumer reporting agency as the date of delinquency; or . . .

5

15 U.S.C. § 1681s-2(a)(5) (emphasis added).[2]

The creditor of Long's debts, Doctors Radiology Group of Gainesville "Creditor," had not reported the DOFDs, making subsection (i) inapplicable. [DE 24-2 "Creditor's Decl." at 177]. Under subsection (ii), OAC established a procedure to obtain the DOFDs from Creditor, which included contacting them to determine on what date they consider an account to be delinquent. [DE 24-1 at 159]. OAC relies on this representation to determine the correct DOFD. [*Id*.]. Here, Creditor considers an account delinquent when it places the account for collections. [*Id*.]. Based on this representation, OAC reported Long's DOFDs as the day before the debts were placed for collection. [DE 24-1 at 175].

Whether or not this procedure is "reasonable" is a question of fact. 15 U.S.C. § 1681s-2(a)(5)(B)(ii). OAC points out Creditor is in the best position to determine the DOFD. [DE 24 at 144]. It also asserts that there was no evidence that a different DOFD should be used. Long produces one page of a trade association's handbook to show that DOFDs are calculated thirty days after the debt's due date. [DE 28 at 381]. This very well may be the industry-standard practice, but Long gives the Court no reason to believe that the thirty-day rule is required under the statute. He also fails to show that OAC violated this industry standard. Creditor stated that they do not consider an account delinquent thirty days after service because it takes longer than that for the doctor's office to report the procedure and for insurance to process the claim. [DE 24-2 at 177]. Thus, the date Creditor provided to OAC could be considered its "due date." Because Long fails to fully explain what the industry-standard practice is, it is impossible to determine whether OAC violated such a practice.

---

[2] Long asserts that this statutory provision cannot apply because he did dispute the DOFDs. [DE 26 at 337]. Long did not dispute the dates until 2021, well after OAC ascertained and reported them to the consumer reporting agency. Therefore, at the time of reporting, § 1681s-2(a)(5)(B) did govern Defendant's actions.

Long also argues that the correct DOFD calculation method comes from state law, not the FCRA. [DE 25-1 at 313-15]. This does not appear appropriate considering that he concedes the FCRA governs the reporting of DOFDs. [*Id*. at 313]. Long cites no authority for the assertion that state law should determine when an account becomes delinquent under FCRA.

The cases Long does cite are irrelevant to the Court's inquiry. He cites *O'Dell,* holding that a class action claim was not mooted by the defendant deleting the affected trade lines. *O'Dell v. Nat'l Recovery Agency*, 291 F. Supp. 3d 687, 698 (E.D. Pa. 2018). The case involved DOFDs, but it focused on mootness and did not address the merits of plaintiffs' claims. *Id*. The next case, *Barnett*, also does not address the merits of any claim and only decertifies a class based on insolvency of the defendant. *Barnett v. Experian Info. Sols., Inc*., 236 F.R.D. 307 (E.D. Tex. 2006). The final citation is not an opinion but a consent decree reflecting the parties' settlement agreement. *United States v. NCO Grp., Inc.*, 2004 WL 1103323 (E.D. Pa. January 1, 2004).

The proper standard for determining DOFDs is found in the FCRA. Whether OAC's selection of DOFDs was reasonable is a question of fact about which Long has produced scant evidence. While Long produced some evidence of a thirty-day industry standard, he failed to show that the standard applied to these accounts or that OAC violated it. As to the reasonableness of OAC's processes, Long has failed to produce anything more than "metaphysical doubt." *Matsushita*, 475 U.S. at 586. Even if Long had shown the DOFDs were improperly calculated, he would still have to prove that OAC knew or should have known that they were reporting false dates—a fact which the parties have failed to address in any of their briefing. Construing all facts in favor of Long, no reasonable jury could find that OAC violated § 1692(e)(8) of the FDCPA.

      ii.    *Materiality*

Even assuming OAC's reported dates were false and they knew or should have known of that fact, Long must also establish that the violation was material. The FCRA provides for debts to age off credit reports after seven years plus 180 days:

> The 7-year period referred to in paragraphs (4) and (6) of subsection (a) shall begin, with respect to any delinquent account that is placed for collection (internally or by referral to a third party, whichever is earlier), charged to profit and loss, or subjected to any similar action, upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action.

15 U.S.C. § 1681c(c)(1). This aging period does not apply when a consumer's credit report is used in "a credit transaction involving, or which may reasonably be expected to involve, a principal amount of $150,000 or more." 15 U.S.C. § 1681c(b)(1).

Long paid off his three delinquent accounts on October 11, 2021. He asserts that he would not have paid off the $105 account balance if the DOFD had been reported as August 10, 2014—thirty days after the date of service—because the account would have aged off before October 2021. [DE 28 at 383 ("Mr. Long would not have paid the $105 to OAC for the oldest collection account because it would no longer [sic] reported on his credit reports as a matter of law")]. This calculation overlooks the preliminary 180-day period before the seven-year count begins. Using Long's method for calculating the DOFD, the balance would have aged off on February 6, 2022—well after he paid the balances in October 2021. Therefore, even if the DOFD were falsely reported, it would not have "misled" the "reasonable unsophisticated consumer" into paying a balance that would not have otherwise appeared. *Wallace.*, 683 F.3d at 327.

Long also asserts that his lowered credit score affected his ability to secure mortgage lending as evidenced by his loan application rejection from Navy Federal Credit Union ("Navy"). [DE 25-1 at 320]. He stops short of claiming that OAC's reported accounts were the cause of the denial. [*Id.*]. Long also fails to establish that Navy accessed the TransUnion credit report on which

8

the disputed accounts would have appeared. [*Id*.]. If Navy did receive record of the accounts through TransUnion, changing the DOFD would not have meant the accounts would not have appeared. Because the credit check was done in connection with a mortgage, it was likely to fall within the statutory exception to the seven-year reporting provision. *See* 15 U.S.C. § 1681c(b)(1). Regardless of the reported DOFDs the accounts were likely to show up on a mortgage report, making OAC's actions immaterial.

## IV. Conclusion

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. OAC's motion for leave to file sur-reply is **GRANTED**;

2. Long's motion for summary judgment [DE 25] is **DENIED**;

3. OAC's motion for summary judgment [DE 24] is **GRANTED.**

4. The Court will enter separate judgment.

October 16, 2023

Rebecca Grady Jennings, District Judge
United States District Court

cc: Counsel of record

9